David P. Schack (State Bar No. 106288)
david.schack@klgates.com
Luke G. Anderson (State Bar No. 210699)
luke.anderson@klgates.com
K&L Gates LLP
10100 Santa Monica Blvd.
Seventh Floor
Los Angeles, California 90067
Telephone:  (310) 552-5000
Facsimile:   (310) 552-5001

Attorneys for Defendant JOHN J. COTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>        v.<br><br>JOHN JOSEPH COTA; REGAL STONE LIMITED; FLEET MANAGEMENT LTD.; and the *M/V COSCO BUSAN*, LR/IMO Ship No. 9231743 her engines, apparel, electronics, tackle, boats, appurtenances, etc., *in rem*,<br><br>                              Defendants. | Case No.  3:08-cv-2052-SC as related to: 07-cv-5800-SC, 07-cv-6045-SC, and 07-cv-5926-SC<br><br>**DECLARATION OF DAVID P. SCHACK IN SUPPORT OF MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDING OR, ALTERNATIVELY, TO COMPEL ARBITRATION**<br><br>Date:        September 5, 2008<br>Time:       10:00 a.m.<br>Ctrm:      1 |

        I, David P. Schack, declare as follows:

        1.        I am an attorney licensed to practice in the State of California and admitted to practice before this Court.  I am a member of the law firm K&L Gates LLP, counsel of record for Defendant John Joseph Cota ("Captain Cota") in the above-captioned action.  I have personal knowledge of the facts set forth below and, if called upon to testify, I could and would do so competently.

2.      Attached hereto as Exhibit "1" is the copy of the Primary Trip Insurance and Pilot's Contingent Legal Liability Policy No. H856049 (the "Continental Policy") issued by plaintiff The Continental Insurance Company ("Continental") and attached to Continental's complaint herein.

3.      The Continental Policy, at Section C.1, provides coverage to Captain Cota for, among other things, "legal liabilities arising out of, relating to, directly or indirectly, losses and/or damages and/or expenses which result while members of the San Francisco Bar Pilots are engaged in the piloting of vessels."  The Continental Policy also contains a broad arbitration clause, at Section Section C.10, requiring Continental to arbitrate all disputes under the Continental Policy:

> "If any dispute arises under this policy the parties hereto shall submit the same to arbitration, for which purpose one arbitrator is chosen by the Assurer and one by the Assured.  The two so chosen, if unable to agree shall select a third as umpire and the award of any two shall be final as between the parties.  The cost of arbitration, including arbitrator's fees, shall be assessed by the arbitrators."

4.      By letter dated December 10, 2007,  I tendered Captain Cota's defense of the criminal matters to Continental under the Continental Policy.  A true and correct copy of the December 10, 2007 tender letter is attached hereto as Exhibit "2."

5.      In correspondence dated  February 26, 2008, Continental denied any coverage obligation to Captain Cota based on the "Pollution Exclusion and Buyback Clause" ("Pollution Exclusion") in the Continental Policy which provided coverage for discharge of oil in certain circumstances but excluded coverage for (i) non-accidental occurrences, (ii) occurrences that were either expected or intended by the insured, and/or (iii) the insured's "intentional or willful violation of any government rule or regulation."  A true and correct copy of Continental's February 26, 2008 letter is attached hereto as Exhibit "3."

6.      On March 17, 2008, the U.S. Attorney's Office filed an Information in the matter United States of America v. Cota, United States District Court for the Northern District of California, Case No. CR 08-00160-JCS (the "Criminal Action"), charging Captain Cota with violations of the Clean Water Act and the Migratory Bird Treaty Act based on his role as an advisory

DECLARATION OF DAVID P. SCHACK IN SUPPORT OF MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDING OR, ALTERNATIVELY, TO COMPEL ARBITRATION – CV 08-2052 SC

1  pilot onboard the COSCO BUSAN and the discharge of fuel into the San Francisco Bay after the

2  vessel's collision with the San Francisco Bay Bridge.  A true and correct copy of the Information is

3  attached hereto as Exhibit "4."

4       7.     Subsequently, on April 22, 2008, the U.S. Attorney's Office filed a Superseding

5  Indictment in the Criminal Action repeating the allegations in the original Information and adding

6  felony charges for violation for violation of 18 U.S.C. § 1001 based on Captain Cota's alleged false

7  statements during pilot medical examinations in January 2006 and January 2007.  A true and correct

8  copy of the Superseding Indictment is attached hereto as Exhibit "5."

9       8.     In an April 11, 2008 letter, Continental  reasserted its denial of coverage based on the

10 Pollution Exclusion.  A true and correct copy of Continental's April 11, 2008 letter is attached hereto

11 as Exhibit "6."  However, thereafter, in a letter dated April 21, 2008, Continental reversed course

12 and accepted Captain Cota's defense.  A true and correct copy of Continental's April 21, 2008 letter

13 is attached hereto as Exhibit "7."  Also on April 21, 2008, simultaneously with issuing its letter

14 accepting defense of the criminal proceedings against Captain Cota, Continental filed its civil action

15 for declaratory relief with this Court against Captain Cota and the Vessel Interests.

16      I declare under penalty of perjury under the laws of the United States that the foregoing is

17 true and correct.

18      Executed this 21st day of July, 2008, at Los Angeles, California.

19

20                              _____/s/ David P. Schack_____

21                              David P. Schack

22

23

24

25

26

27

28

DECLARATION OF DAVID P. SCHACK IN SUPPORT OF MOTION TO STAY CIVIL ACTION PENDING
RESOLUTION OF CRIMINAL PROCEEDING OR, ALTERNATIVELY, TO COMPEL ARBITRATION –
CV 08-2052 SC

# EXHIBIT 1



# POLICY OF INSURANCE

**POLICY NO.:**          **H 856049**

**ASSURED:**          **San Francisco Bar Pilots, et al, as attached**

**INTEREST INSURED:**          **Primary Trip Insurance and Pilot's Contingent Legal Liability**

**AMOUNT INSURED HEREIN:**          **$1,000,000 Combined Single Limit**

**FROM:**          **January 1, 2007, 0001 hours, PST**

**TO:**          **January 1, 2008, 0001 hours, PST**

Exhibit _____

# Table of Contents

## Section A – General Conditions

## Section B – Primary Trip Insurance

## Section C - Pilot's Contingent Legal Liability Insurance

2.

# SECTION A

## <u>General Conditions Applicable to All Policy Sections</u>

**ASSURED:**  San Francisco Bar Pilots, The San Francisco Bar Pilots Benevolent Association and their officers and employees and the individual Pilot performing the services insured hereunder.

**LOSS PAYEE:**  Assured, or order.

**COVERAGE:**  Section B – Primary Trip Insurance
Section C – Pilot's Contingent Legal Liability Insurance

**PERIOD:**  January 1, 2007, 0001 hours, Pacific Standard Time to
January 1, 2008, 0001 hours, Pacific Standard Time

**LIMIT OF LIABILITY
& SUM INSURED:**  $1,000,000 any one accident or occurrence, both sections combined.

**CONDITIONS:**  As per manuscript wordings (including Pollution Exclusion and Buyback clause) attached hereunder.

**PREMIUM:**  This policy is issued in consideration of a Minimum and Deposit Premium of $70,335 (payable quarterly) subject to premium adjustment at policy expiration at a rate of:

Section B - $129.35 per each trip, shift or engagement where the Owner/Operator elects to purchase coverage.

Section C - $9.49 per each trip, shift or engagement where the Owner/Operator elects not to purchase the coverage described in Section B hereunder.

**REPORTS:**  The Assured agrees to provide monthly reports to Marsh Risk and Insurance Services which provide the names of all vessels accepting or declining coverage under Section B.

# POLLUTION EXCLUSION AND BUYBACK CLAUSE

## <u>Applicable to All Policy Sections</u>

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met:

(a) The occurrence was accidental and was neither expected nor intended by the Assured. An occurrence shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Assured.

(b) The occurrence can be identified as commencing at a specific time and date during the term of this policy.

(c) The occurrence became known to the Assured within 7 days after its commencement.

(d) The occurrence was reported in writing to these underwriters within 90 days after having become know to the Assured.

(e) The occurrence did not result from the Assured's intentional and willful violation of any government statue, rule or regulation.

Nothing contained in this Endorsement shall operate to provide any coverage with respect to:

(1) loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured;

(2) removal of, loss or damage to sub-surface oil, gas or any other substance;

(3) fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

(4) any site or location used in whole or in part for the waste, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances.

Notwithstanding any other provision of this policy or any underlying insurance, this policy of insurance is not evidence of financial responsibility under the Oil Pollution Act of 1990 or any

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

*4.*

similar federal or state laws.  Any showing or offering of this policy by the Assured as evidence of insurance shall not be taken as any indication that the Underwriters consent to act as guarantor or to be sued directly in any jurisdiction whatsoever.  The Underwriters do not consent to be guarantors or to be sued directly.

## ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED

5.

# SECTION B

# **Primary Trip Insurance**

Subject to the terms and conditions set forth within this policy, Underwriters as shown below, hereinafter referred to as the Assurer, do insure the individual Pilot providing services, the San Francisco Bar Pilots, The San Francisco Bar Pilots Benevolent Association and their officers and employees hereinafter called the Assured, in the sum as stated above against the hereinafter described losses and liabilities arising out of, or relating to, directly or indirectly the acts, omissions or negligence of licensed pilots, officers or employees of San Francisco Bar Pilots in connection with the provision of pilotage service, provided that such losses and liabilities occur while a licensed pilot or authorized trainee from San Francisco Bar Pilots is piloting the vessel on whose behalf this policy has been procured.

The coverage provided by this policy attaches solely to the individual vessel movement for which trip insurance has been ordered pursuant either to the provisions of California Senate Bill No. 1109 or to private agreement between the Assured and the owners, master, operators, charterers or agents of the vessel. The period of the coverage hereunder is limited to the period the pilot is aboard the vessel or piloting services are provided.

The Assurer hereby undertakes to make good to the Assured or successors, all such loss and/or damage and/or expenses as the Assured shall have sustained and/or shall have become legally liable to pay on account of the consequences of acts, omissions or negligence of either licensed pilots of the San Francisco Bar Pilots and The San Francisco Bar Pilots Benevolent Association, or officers or employees of San Francisco Bar Pilots and The San Francisco Bar Pilots Benevolent Association: provided, however, that such insurance provides coverage only for that proportion of losses, damages and expenses sustained by the Assured, or other parties, which are proximately caused by the acts, omissions or negligence of the Assured and that no coverage is provided for losses, damages and expenses resulting from any other cause whatsoever.

1.  The Assured under this policy is protected and indemnified for losses and damages resulting from liabilities, risks, events, happenings and/or occurrences set forth within this policy including but not limited to:

    (a) For loss or damage that may be caused to the vessel being navigated by the pilot.

    (b) For loss or damage that may be caused to any vessel, or waterborne craft of any description, by the vessel being navigated by the pilot.

    (c) For loss or damage that may be caused to any wharves, piers, stages and similar structures, or any other property afloat or ashore, by the vessel being navigated by the pilot.

*6.*

(d) For loss or damage, whether by collision or otherwise, which may be caused to any goods, merchandise, equipment or other thing of value whatsoever, whether on board any vessel or waterborne craft, or not, or to any vessel or waterborne craft, pier, jetty, or other movable or fixed thing whatsoever.

(e) For loss of life or personal injury, whether by collision or otherwise, to any person other than employees of San Francisco Bar Pilots, wheresoever such person or persons may be.

(f) For Pollution Liabilities as described in the attached Pollution Exclusion and buyback wording.

(g) The provisions of California Senate Bill No. 1109 and the provisions of the agreements between San Francisco Bar Pilots and the owners, operators, charterers and agents of vessel on whose behalf piloting services are rendered have been made available to Assurer.  It is the intent of the Assurer and the Assured that the Assured's legal liabilities that would otherwise be covered by the exculpatory and indemnification clauses set forth within California Senate Bill No. 1109 and within the pilot Contract and agreement as described above be insured by this policy, except as may be specifically excluded by the terms and conditions as shown below.

2.    Liability hereunder in respect to any one accident is limited to the amount of this policy; but the face value of this policy shall always remain at its original amount irrespective of any payments made or expenses incurred by the Assurer.

(a) It is understood and agreed that any payment in respect of liability for any one accident or occurrence shall not act to reduce the policy limits hereunder in respect of liability for any subsequent accident or occurrence, it being understood the full policy limit shall remain in full force and effect for each separate accident or occurrence during the entire period this policy is in force.

(b) However, it is also understood and agreed that the naming of any additional Assured(s) shall not serve to increase the policy limit in respect of any one accident or occurrence hereunder, notwithstanding the fact that liability may be asserted against more than one Assured, separately or combined.

(c) It is also understood and agreed that liability for all loss, damage, cost, or expense, including all costs of investigation, defense, negotiation or settlement shall be included in the policy limit and shall not exceed $1,000,000 in respect of any one accident or occurrence.

3.    The Assured shall give prompt written notice of all claims to Marsh Risk & Insurance Services, One California Street, San Francisco, CA 94111.  All losses under this policy shall become due and payable within ninety (90) days after the submission of satisfactory proof thereof, and shall be paid to the Assured, or order.

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

7.

4.  The Assurer shall be subrogated to all rights which Assured may acquire against any third person, entity or vessel, by reason of any payments made to the Assured upon claims upon which the Assured is entitled to be indemnified under this policy, to the extent of such payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights.

5.  If any dispute arises under this policy the parties hereto shall submit the same to arbitration, for which purpose one arbitrator is to be chosen by the Assurer and one by the Assured. The two so chosen, if unable to agree shall select a third as umpire and the award of any two shall be final as between the parties. The cost of arbitration, including arbitrator's fees, shall be assessed by the arbitrators.

6.  Notwithstanding anything to the contrary, contained in the policy, this insurance is warranted free from any claim for loss, damage or expenses caused by or resulting from capture, seizure, arrest, restraint or detainment or the consequence thereof or of any attempt, threat, or any taking of the vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise, also from consequences of hostilities or warlike operation (whether there by a declaration of war or not), piracy, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom.

7.  Notwithstanding anything contained in the policy, this insurance is warranted free from any claim for loss, damage or expense caused solely by strikers, locked-out workmen or persons taking part in labor disturbances or riots or civil commotions.

8.  Notwithstanding anything contained in the policy, any shift or engagement involving air drafts of less than ten feet under the Golden Gate Bridge and/or Bay Bridge must be reported to Underwriters in advance of binding coverage under this Section, and may be subject to additional premium.

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

8.

# SECTION C

## Pilot's Contingent Legal Liability

Subject to the terms and conditions set forth within this policy, Underwriters as shown below, hereinafter called the Assurer, by this policy of insurance do insure:

> San Francisco Bar Pilots, The San Francisco Bar Pilots Benevolent Association and their officers and employees and the individual Pilot performing the services insured hereunder

hereinafter called the Assured, in the sum insured stated above for each and every accident or occurrence herein after designated, against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth.

The coverage provided by this policy attaches solely to the individual vessel movement for which trip insurance (as detailed in Section B hereunder) has NOT been ordered pursuant either to the provisions of California Senate Bill No. 1109 or to private agreement between the Assured and the owners, master, operators, charterers or agents of the vessel. The period of the coverage hereunder is limited to the period the pilot is aboard the vessel or piloting services are provided in connection with such movement.

The Assurer hereby undertakes to make good to the Assured or successors, all such loss and/or damage and/or expenses (limited to the amount of this policy) as the Assured shall have become liable to pay on account of the liabilities, risks, events, happenings, and/or occurrences herein set forth.

1.    The Assured under this policy is protected and indemnified for legal liabilities arising out of, or relating to, directly or indirectly, losses and/or damages and/or expenses which result while members of the San Francisco Bar Pilots are engaged in the piloting of vessels, including but not limited to:

(a)  For loss or damage which may be caused to any other vessel, or waterborne craft of any description, by the vessel being navigated by the pilot.

(b)  For loss or damage which may be caused to any wharves, piers, stages and similar structures, or any other property afloat or ashore, by the vessel being navigated by the pilot.

(c)  For loss or damage which may be caused to the vessel being navigated by the pilot.

(d)  For loss or damage, whether by collision or otherwise, which may be caused to any goods, merchandise, equipment or other thing of value whatsoever, whether on board any vessel or waterborne craft, or not, or to any vessel or

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

*9.*

waterborne craft, pier, jetty, or other movable or fixed thing whatsoever.

(e)  For loss of life or personal injury, whether by collision or otherwise, to any person other than employees of San Francisco Bar Pilots, wheresoever such person or persons may be.

(f)  For Pollution Liabilities as described in the attached Pollution Exclusion and Buyback wording.

(g)  The provisions of California Senate Bill No. 1109 and the provisions of the agreements between San Francisco Bar Pilots and the owners, operators, charterers and agents of vessel on whose behalf piloting services are rendered have been made available to Assurer.  It is the intent of the Assurer and the Assured that the Assured's legal liabilities that would otherwise be covered by the exculpatory and indemnification clauses set forth within California Senate Bill No. 1109 and within the pilot Contract and agreements as described above be insured by this policy, except as may be specifically excluded by the terms and conditions as shown below.

2.    In the event that one of the named Assureds incurs liability to any other of the named Assureds in this policy, the policy shall cover the named Assured against whom claim is or may be made in the same manner as if separate policies had been issued to each named Assured.

However, it is understood and agreed that the foregoing Paragraph No. 2 does not increase the Limit(s) of Liability covered by this insurance.

3.    For the purpose of this insurance, it is understood and agreed that in case property damaged by an act or occurrence covered by this policy is owned by the Assured, the fact of such ownership shall not invalidate any claims, but shall be treated as if the property in question belonged to a third party, and the Assured shall be indemnified to the same extent and under the same conditions as if such were the case.

This clause applies only in situations where pilots as described above are engaged in the piloting of vessels in the course of their employment.

4.    Each claim for loss or damage, including costs of defense and attorneys fees, shall be adjusted separately and from the amount of each such adjusted claim or the limit of liability, whichever is the lesser, the sum of $2,500 shall be deducted.

(a)  It is understood and agreed that any payment in respect of liability for any one accident or occurrence shall not act to reduce the policy limits hereunder in respect of liability for any subsequent accident or occurrence, it being understood the full policy limit shall remain in full force and effect for each separate accident or occurrence during the entire period this policy is in force.

(b) However, it is also understood and agreed that the naming of any additional Assured(s) shall not serve to increase the policy limit in respect of any one accident or occurrence hereunder, notwithstanding the fact that liability may be asserted against more than one Assured, separately or combined.

(c) It is also understood and agreed that liability for all loss, damage, cost, or expense, including all costs of investigation, defense, negotiation or settlement shall be included in the policy limit and shall not exceed $997,500 excess of $2,500 in respect of any one accident or occurrence.

5. Liability hereunder in respect of any one accident is limited to the amount of this policy; but the face value of this policy shall always remain at its original amount irrespective of any payments made or expenses incurred by the Assurer.

6. The Assured shall give prompt written notice of all claims to Marsh Risk & Insurance Services, One California Street, San Francisco, CA 94111. All losses under this policy shall become due and payable within ninety (90) days after the submission of satisfactory proof thereof, and shall be paid to the Assured, or order.

7. The Assurer shall be subrogated to all rights which Assured may acquire against any third person, entity or vessel, by reason of any payments made to the Assured upon claims upon which the Assured is entitled to be indemnified under this policy, to the extent of such payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights.

8. It is understood and agreed that the Assurer will, at the written request of the Assured, defend on behalf of the Assured any claim hereunder or any suit or action at law that may possibly result in a claim hereunder, and that the costs of such defense, including attorneys' fees, are included as expenses and liabilities to which the limits of this policy apply. The Assured agrees to give its full cooperation in all matters relating to the defense of any such suit or action. Assured reserves the right to join and assist in such defense at their own expense. It is further understood and agreed with respect to claims within the Assured's retention that legal counsel shall be selected by the Assured.

9. It is warranted by the Assured that it shall not be party to any agreement under which it may agree to assume liability for losses covered by this policy. Failure to comply with this warranty shall render this policy null and void as to coverage for those liabilities so assumed.

10. If any dispute arises under this policy the parties hereto shall submit the same to arbitration, for which purpose one arbitrator is to be chosen by the Assurer and one by the Assured. The two so chosen, if unable to agree shall select a third as umpire and the award of any two shall be final as between the parties. The cost of arbitration, including arbitrator's fees, shall be assessed by the arbitrators.

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

*11.*

11.    It is warranted by the Assured that all pilots are currently and continuously licensed to perform pilotage in the San Francisco Bay and its tributaries or are authorized trainees.

12.    This policy may be cancelled at any time at the request of the Assured or the Assurer by giving ninety (90) days notice in writing of such cancellation.

13.    Notwithstanding anything to the contrary, contained in the policy, this insurance is warranted free from any claim for loss, damage or expenses caused by or resulting from capture, seizure, arrest, restraint or detainment or the consequence thereof or of any attempt, threat, or any taking of the vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise, also from consequences of hostilities or warlike operation (whether there by a declaration of war or not), piracy, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom.

14.    Notwithstanding anything to the contrary contained in this policy, this insurance is warranted free of any claim for loss, damage or expense caused solely by strikers, locked-out workmen or persons taking part in labor disturbances or riots or civil commotion.

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

*12.*

## AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

All other provisions of the Policy remain unchanged.

## EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE WITH U.S.A. ENDORSEMENT

### (American Institute of Marine Underwriters – March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1  ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

    1.4  the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

*13.*

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

> if fire is an insured peril
>
> and
>
> where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions
>
> and
>
> a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinbefore set forth.


## CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE

### (American Institute of Marine Underwriters – March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinbefore set forth.

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

14.

## COVERAGE OF AND CAP ON LOSSES FOR CERTIFIED ACTS OF TERRORISM UNDER THE TERRORISM RISK INSURANCE ACT OF NOVEMBER 2002

In consideration of the premium allocation of $1,318.00 it is agreed as follows:

The policyholder has been previously notified of the availability of and the price for coverage of Certified Acts of Terrorism under the Federal Terrorism Risk Insurance Act of 2002. The Policyholder has opted to purchase such coverage under its policy.

This endorsement provides coverage for Certified Acts of Terrorism as follows:

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a Certified Act of Terrorism:

    a. The act resulted in aggregate losses in excess of $5 million; and

    b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This Policy provides coverage for losses arising from Certified Acts of Terrorism subject to all other terms and conditions of this policy.

Under the federal Terrorism Risk Insurance Act of 2002, any losses caused by Certified Acts of Terrorism will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

With respect to any one or more Certified Acts of Terrorism, the Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause in such law which results in a cap on the Insurer's liability for payments for terrorism losses.

All other provisions of the Policy remain unchanged.

*15.*

Any provisions required by law to be printed in policies issued by a Subscriber thereto, shall be deemed to have been stated herein.

IN WITNESS WHEREOF, The Subscribers hereunder each severally, but not jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney, or agent, this 1st day of January 2007.

| Subscriber | Amount Insured | Minimum & Deposit Premium | Authorized Signature |
|---|---|---|---|
| Continental Insurance Company – (Marine Office of America Corporation) | $1,000,000 | $70,335 | |

Commission: 17.5%

**R E C E I V E D**

DEC 1 3 2006

MARSH RISK & INS. SVCS.
San Francisco

Page 16 of 16

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

*16.*

# EXHIBIT 2

# K&L|GATES

Kirkpatrick & Lockhart Preston Gates Ellis LLP
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, CA 90067

T 310.552.5000    www.klgates.com

December 10, 2007

David P. Schack
D 310.552.5061
F 310.552.5001
david.schack@klgates.com

**Via Federal Express and Fax (312) 822-6419**

Continental Insurance Co.
333 South Wabash Ave., Fl. 22
Chicago, IL 60604

|  | Re: | Insurer: | Continental Ins. Co. (Marine Office of American Corp.) (hereinafter "CIC") |
|---|---|---|---|
|  |  | Insureds: | San Francisco Bar Pilots, John Cota, et al. |
|  |  | Policy No.: | H856049 (the "Policy") |

Ladies and gentlemen:

This firm represents Captain John Cota who is an insured under the Policy. We understand that one or more suits arising from the vessel movement of the COSCO BUSAN on November 7, 2007 while Captain Cota was piloting the vessel have been previously tendered to CIC. We further understand that the details of this incident have been provided to CIC, and CIC has accepted defense of such suit(s) without a reservation of rights under the Policy.

By this letter, we advise you that the United States Attorney has asserted certain legal liabilities against Captain Cota arising from his piloting services while aboard COSCO BUSAN on November 7, 2007. Among other things, we understand that the United States Attorney is asserting the Captain Cota violated certain federal laws (which can be triggered by a negligence or strict liability standard) and which create liability for, among other things, expenses and other damages, including, without limitation, possible remediation expenses.[1]

Captain Cota has retained our firm, and in particular, Jeffrey Bornstein, to defend him in connection with the legal liability being asserted by the United States Attorney. Please confirm forthwith that CIC will pay Captain Cota's defense fees and costs incurred in this matter as required under the Policy.

---

[1] The federal laws include, inter alia, the Clean Water Act of 1977 and the Refuse Act of 1899.

LA-213264 v2

*17.*

Exhibit __2__

K&L|GATES

Continental Insurance Co.
December 10, 2007
Page 2


Of course, nothing in this letter is, or shall be deemed to be, a waiver of any factual or legal position, or of any rights, of Captain Cota, all of which are expressly reserved hereby.

Sincerely,

David P. Schack

*18.*

# EXHIBIT 3

**ⒷⒷ Bullivant | Houser | Bailey** PC

Attorneys at Law

# FAX

| | | | |
|---|---|---|---|
| **From:** | Kent J. Clancy | **Date:** | February 26, 2008 |
| **C/M #:** | 10734/00119 | **Reference:** | COSCO BUSAN |

---

**Number of pages being transmitted including the cover page:  7**

---

|  | | **Fax No.** | **Telephone No.** |
|---|---|---|---|
| **To:** | David P. Schack | (310) 552-5001 | (310) 552-5000 |
| | K & L Gates | | |

**Message/Document(s) faxed:**

**Please call fax operator at (415) 352-2700 if all pages are not received.**

---

ORIGINAL DOCUMENTS:  Will follow by ☒ mail ☐ courier – OR - ☐ Will not follow unless requested.

---

**CONFIDENTIALITY NOTE:** The documents accompanying this facsimile transmission contain information belonging to Bullivant Houser Bailey which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone to arrange for return of the original documents to us.

**As this facsimile may fade, you are advised to make photocopies for files to ensure a permanent record.**

FAX OPERATOR:  Return originals to:   Debbie Fong                Ext:    2746

**Bullivant | Houser | Bailey** PC

Attorneys at Law

KENT J. CLANCY
Direct Dial: (415) 352-2714
E-mail: kent.clancy@bullivant.com

February 26, 2008

*Via Facsimile and U.S. Mail*

David P. Schack
K & L Gates
10100 Santa Monica Blvd., 7th Fl.
Los Angeles, CA 90067

> Re:   COSCO BUSAN
> Continental Insurance Co. Policy: H856049
> Insured: San Francisco Bar Pilots, John Cota, et al.
> D/L: November 7, 2007
> Our File: 10734/119

Dear Mr. Schack:

I write in response to your letter dated February 13, 2008. You correctly state that we have spoken twice by telephone. The first time we spoke was January 17, 2008, after you had received my letter of January 14, 2008. During that conversation, you said you would be writing in response to that letter. The second time we spoke was on February 8, 2008, and I asked that any response to my letter of January 14, 2008 be in the form of a letter.

On February 11, 2008—two days prior to your letter—your client, Captain Cota, accepted the substitution of Walter Coppenrath for George Nowell in the matters Mr. Nowell had been handling. Since your letter did not mention this, perhaps you were unaware of it. To Continental's knowledge, there are no civil claims or suits pending against Captain Cota that are not being defended by Mr. Coppenrath at the expense of vessel interests.

With respect to indemnity, Continental is not aware of any judgment against (or settlement involving) Captain Cota for which he is in need of indemnification. Nor is it fair to characterize the vessel owner's reservation of rights as a declination of indemnity. Just as the vessel owner has honored its statutory obligation to defend, Continental expects the vessel owner will honor its statutory obligation to indemnify, if and when the need arises.

The bulk of your letter argues that Continental "is obligated to defend Captain Cota against the claim for criminal liability being asserted by the U.S. Attorney." You mention

10458135.1   **601 California Street, Suite 1800, San Francisco, CA 94108-2823** • 415.352.2700  Fax 415.352.2701
**www.bullivant.com**   |   Seattle   Vancouver   Portland   Sacramento   San Francisco   Las Vegas

*20.*

David P. Shack
February 26, 2008
Page 2

"criminal liability" at least eleven other times. You also use the terms "criminal claim" (five times), "criminal matter" (twice), "criminal proceedings," and "criminal action." I take those statements to mean that the fees of Mr. Bornstein (which you would have Continental pay) are fees for the representation of Captain Cota in connection with a pending investigation by the U.S. Attorney into possible *criminal* charges. Continental disagrees that it has any duty to pay those fees.

Although you correctly point out that the policy provides for defense of "claims" as well as "suits," you have offered no analysis for your conclusion that there is a criminal "claim" pending against Captain Cota. In the context of insurance policies, the term "claim" has repeatedly been interpreted to mean a demand for something (such as money, property, or services) due as a matter of right. <u>Phoenix Ins. Co. v. Sukut Construction Co.</u>, 136 Cal. App. 3d 673 (1982). Court papers recently filed by Captain Cota confirm that he has not been charged with any crimes. We understand that he is still just a "target," which means that the U.S. Attorney is *considering* bringing charges against him.

Furthermore, you concede that Continental's duty to defend "claims" is limited to claims for which Continental could potentially owe indemnity under the policy. Although you mention the Clean Water Act of 1977 and the Refuse Act of 1899, you offer no analysis of how Continental might have a duty to indemnify Captain Cota against the particular criminal sanctions that may be imposed under those statutes. Indeed, you do not even identify those sanctions.

Continental understands that under the Clean Water Act, it is illegal to discharge oil into the navigable waters of the United States without a permit. 33 U.S.C. § 1321(b)(3). Section 1319(c) sets forth the "Criminal Penalties" that may be imposed for violation of the statute. Those penalties are imprisonment and fines. The Refuse Act also provides for imprisonment and fines.

Continental does not see how an insurer could be called upon to "indemnify" an insured against imprisonment. Conceivably, an insurer could indemnify an insured against fines. However, any fines in this case would arise out of liability for pollution. Continental's policy prominently contains the following exclusion:

### POLLUTION EXCLUSION AND BUYBACK CLAUSE

#### <u>Applicable to All Policy Sections</u>

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release, or

David P. Shack
February 26, 2008
Page 3

> escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals,
> liquids or gases, waste materials, *oil or other petroleum*
> *substance or derivative (including any oil refuse or oil mixed*
> *wastes)* or other irritants, contaminants or pollutants into or
> upon land, the atmosphere, or *any watercourse or body of water.*

(Italics added.) This exclusion is subject to an exception involving five conditions, but even when those conditions are met, the exclusion continues to apply to "*fines, penalties*, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages. (Italics added.)[1]

Because the policy conspicuously and unambiguously excludes coverage for fines and penalties arising out of claims for oil pollution, Continental will have no duty to indemnify Captain Cota for any fines or penalties that may be assessed against him on account of the Cosco Busan incident. Correspondingly, should a "claim" for fines and penalties ever be made against him, Continental will have no duty to defend that "claim." The same holds true for any "claim" the U.S. Attorney might make that Captain Cota pay restitution to any alleged victim of any alleged crime. See State Farm Fire & Cas. Co. v. Superior Court, 191 Cal. App. 3d 74 (1987).[2]

There may be other terms and conditions, not mentioned herein, that apply to Captain Cota's claim. Nothing in this letter should be construed as a waiver of any of Continental's rights or Captain Cota's obligations under the policy or the law. If Captain Cota believes that Continental has wrongfully denied or rejected his claim for payment of Mr. Bornstein's fees, he has the right to have this matter reviewed by the California Department of Insurance located at:

California Department of Insurance
Claims Service Bureau
300 S. Spring Street, 11th Floor
Los Angeles, California 90013
(800) 927-4357 or (213) 897-8921

In addition, please note that the policy provides that if "any dispute arises under this policy, the parties hereto shall submit the same to arbitration."

---

[1] A copy of the Pollution Exclusion and Buyback Clause endorsement is enclosed.
[2] "Restitution is ordered as punishment in a criminal case. No conceivable justification exists for allowing an individual to pass on such liability to an insurance carrier."

David P. Shack
February 26, 2008
Page 4

    So far as we can determine, the full panoply of *civil* liabilities to which Captain Cota might be exposed under federal law has been asserted in the civil action (which Mr. Coppenrath is defending) filed by the Department of Justice. However, if you believe there is any pending civil claim under federal law for which Captain Cota is *not* being defended, please provide us with full details. Please also provide proof that any such claim has been tendered to the vessel owner under Harbors & Navigations Code § 1198, and please provide any correspondence from the vessel owner concerning the tender.

Very truly yours,

Kent J. Clancy

KJC:djf

Encl.: Pollution Exclusion and Buyback Clause endorsement

cc:    Chip Junghans (*via E-mail; w/encl.*)
       SF Bar Pilots, c/o Paul Seeth (*via E-mail; w/encl.*)

# POLLUTION EXCLUSION AND BUYBACK CLAUSE

## <u>Applicable to All Policy Sections</u>

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

This exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met:

(a) The occurrence was accidental and was neither expected nor intended by the Assured. An occurrence shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Assured.

(b) The occurrence can be identified as commencing at a specific time and date during the term of this policy.

(c) The occurrence became known to the Assured within 7 days after its commencement.

(d) The occurrence was reported in writing to these underwriters within 90 days after having become know to the Assured.

(e) The occurrence did not result from the Assured's intentional and willful violation of any government statue, rule or regulation.

Nothing contained in this Endorsement shall operate to provide any coverage with respect to:

(1) loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured;

(2) removal of, loss or damage to sub-surface oil, gas or any other substance;

(3) fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

(4) any site or location used in whole or in part for the waste, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances.

Notwithstanding any other provision of this policy or any underlying insurance, this policy of insurance is not evidence of financial responsibility under the Oil Pollution Act of 1990 or any

S:\dep\mari-Marine and Energy\SFBP\2007\Primary Trip and Legal Liability Policy (d).doc

24.

similar federal or state laws. Any showing or offering of this policy by the Assured as evidence of insurance shall not be taken as any indication that the Underwriters consent to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Underwriters do not consent to be guarantors or to be sued directly.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED**

25.

# EXHIBIT 4

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☒ INFORMATION  ☐ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

Count One: 33 U.S.C. §§ 1319(c)(1), 1321(b)(3) -
(Clean Water Act - Negligent Discharge of a Pollutant);

Count Two:  16 U.S.C. §§ 703 and 707(a) -
(Migratory Bird Treaty Act)

**E-filing**

☐ Petty
☐ Minor
☒ Misde-meanor
☐ Felony

PENALTY:  Count One: 1 year imprisonment, $100,000 fine, 1 year supervised release, $25 special assessment.
Count Two: 6 months imprisonment, $15,000 fine, 1 year supervised release, $10 special assessment

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

### DEFENDANT - U.S.

JOHN JOSEPH COTA

DISTRICT COURT NUMBER

**MAG**

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

U.S. COAST GUARD/ENVIRONMENTAL PROTECTION AGENCY

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form    JOSEPH P. RUSSONIELLO
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    STACEY GEIS/DAVID JOYCE

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction        ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐     If "Yes"
been filed?  ☐ No   give date filed

DATE OF ARREST         Month/Day/Year

Or... If Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY    Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance    * Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time: _____    Before Judge: _____

Comments:

26.

**Exhibit  4**

E-filing

FILED
MAR 17 AM 11: 53
RICHARD W. WIEKING
CLERK, US. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  JOSEPH P. RUSSONIELLO
   United States Attorney
2  BRIAN J. STRETCH (CASBN 163973)
   Chief, Criminal Division
3  STACEY P. GEIS (CASBN 181444)
   JONATHAN SCHMIDT (CASBN 230646)
4  Assistant United States Attorneys
   450 Golden Gate Ave., 11th Floor
5  San Francisco, CA 94102
   (415) 436-6776 (tel)
6  (415) 436-7234 (fax)
   Jonathan.Schmidt@usdoj.gov
7

8  RONALD J. TENPAS
   Assistant Attorney General
9  Environment and Natural Resources Division
   United States Department of Justice
10 DAVID B. JOYCE
   Trial Attorney
11 Environmental Crimes Section
   P.O. Box 23985
12 L'Enfant Plaza Station
   Washington, DC 20004
13 (202) 305-0321 (tel)
   (202) 305-0396 (fax)
14 David.Joyce@usdoj.gov

15
   Attorneys for Plaintiff
16 United States of America

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                       SAN FRANCISCO DIVISION

20

21

22 UNITED STATES OF AMERICA,          )  No. CR
                                       )
23        Plaintiff,                   )  VIOLATIONS:
                                       )
24 v.                                  )  Title 33 U.S.C. §§ 1319(c)(1)(A),
                                       )  1321(b)(3) (Clean Water Act) (one
25 JOHN JOSEPH COTA,                   )  count)(a Class A misdemeanor);
                                       )  Title 16 U.S.C. §§ 703, 707
26        Defendant.                   )  (Migratory Bird Treaty Act) (one count)
                                       )  (a Class B Misdemeanor)
27                                     )
                                       )
28 _____        )

MAG

# INFORMATION

The United States Attorney charges:

## INTRODUCTION

At all times relevant to this Information:

1. The *M/V Cosco Busan* was a 901 foot, 65,131 gross ton container ship registered in Hong Kong and bearing IMO number 9231743.

2. The Defendant, JOHN JOSEPH COTA, was a resident of Petaluma, California, and was a member of the San Francisco Bar Pilots. COTA was licensed both by the United States Coast Guard and the State of California as a Pilot. COTA had been employed as a Pilot in San Francisco Bay since 1981.

3. On November 7, 2007, the *M/V Cosco Busan* departed the Port of Oakland in heavy fog and struck the Delta span of the San Francisco Bay Bridge, which resulted in the discharge of approximately 58,000 gallons of heavy fuel oil and caused environmental damage, including the loss of migratory birds.

## LEGAL FRAMEWORK

### The Clean Water Act and the Oil Pollution Act

4. In the Federal Water Pollution Control Act (the "Clean Water Act"), as amended by the Oil Pollution Act, 33 U.S.C. § 1321(b)(1), Congress has declared that it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States or the adjoining shorelines.

5. The Clean Water Act makes it a crime for a person to negligently discharge oil into or upon the navigable waters or contiguous zone of the United States in such quantities as may be harmful. 33 U.S.C. §§ 1319(c)(1) and 1321(b)(3).

6. The Clean Water Act defines a "discharge" as any spilling, leaking, pumping, pouring, emitting, emptying or dumping. 33 U.S.C. § 1321(a)(2). The Clean Water Act defines "oil" as oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge and oil residue. 33 U.S.C. § 1321(a)(1).

2

7. Federal regulations promulgated under the Clean Water Act define a "harmful" quantity of oil as including any discharges of oil that cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or adjoining shorelines. 40 C.F.R. § 110.3

8. The Clean Water Act defines the "navigable waters" of the United States as the waters of the United States and the territorial seas, which are defined to be water extending three (3) miles seaward of the ordinary low tide mark. 33 U.S.C. §§ 1362(7) and 1362(8). Navigable waters also includes internal waters, which are "the waters shoreward of the territorial sea baseline." 33 C.F.R. §§ 2.24(a); 2.36. San Francisco Bay is a navigable waterway of the United States.

## The Migratory Bird Treaty Act

9. The Migratory Bird Treaty Act ("MBTA") makes it unlawful for any person, at any time, by any means or in any manner, to take or kill any migratory bird without a permit or as otherwise provided by regulation. 16 U.S.C. §§ 703, 707(a).

10. The term "take" in the MBTA includes killing or wounding. 50 C.F.R. § 10.12.

11. The Brown Pelican (*Pelecanus occidentalis*), Marbled Murrelet, (*Brachyramphus marmoratus*), and Western Grebe, (*Aechmophorus occidentalis*), among others, are listed as migratory birds pursuant to the MBTA. 50 C.F.R. § 10.13.

///

///

///

///

3

**Count One -- 33 U.S.C. §§ 1319(c)(1), 1321(b)(3)**
**(Clean Water Act -- Negligent Discharge of a Pollutant)**

12.  Paragraphs 1-8 are realleged and incorporated by reference as though fully set forth herein.

13.  On or about November 7, 2007, in San Francisco Bay, within the Northern District of California, the defendant,

JOHN JOSEPH COTA,

did negligently cause the discharge of oil in such quantities as may be harmful from a vessel, the *M/V Cosco Busan*, into and upon the navigable waters of the United States, without a permit.  Specifically, on or about November 7, 2007, Defendant Cota, while piloting the *M/V Cosco Busan*, caused approximately 58,000 gallons of heavy fuel oil to be discharged from the vessel into San Francisco Bay by acting in a negligent manner, that included the following: (a) failing to pilot a collision free course; (b) failing to adequately review with the Captain and crew of the *M/V Cosco Busan* prior to departure the official navigational charts of the proposed course, the location of the San Francisco Bay aids to navigation, and the operation of the vessel's navigational equipment; (c) departing port in heavy fog and then failing to proceed at a safe speed during the voyage despite limited visibility; (d) failing to use the vessel's radar while making the final approach to the Bay Bridge; (e) failing to use positional fixes during the voyage; and (f) failing to verify the vessel's position vis-à-vis other established and recognized aids to navigation throughout the voyage.

All in violation of Title 33, United States Code, Sections 1319(c)(1)(A) and 1321(b)(3), a Class A misdemeanor.

///

///

4

30.

**Count Two – 16 U.S.C. §§ 703 and 707(a)**
**(Migratory Bird Treaty Act)**

14. Paragraphs 1-13 are realleged and incorporated by reference as though fully set forth herein.

15. On or about November 7, 2007, in San Francisco Bay, within the Northern District of California, the defendant,

JOHN JOSEPH COTA,

without being permitted to do so by regulation as required by law, did take migratory birds, including at least one Brown Pelican, (*Pelecanus occidentalis*), Marbled Murrelet, (*Brachyramphus marmoratus*), and Western Grebe, (*Aechmophorus occidentalis*).

All in violation of Title 16, United States Code, Sections 703 and 707(a), and Title 50, Code of Federal Regulations, Sections 21.11, 20.71 and 20.72, a Class B misdemeanor.

JOSEPH P. RUSSONIELLO
United States Attorney
BRIAN J. STRETCH
Chief, Criminal Division

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice

By: _____
STACEY P. GEIS
Assistant United States Attorney

By: _____
DAVID B. JOYCE
Trial Attorney
Environmental Crimes Section

5

31.

# EXHIBIT 5

AO 257 (Rev. 6/78)

---

### DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

---

**OFFENSE CHARGED**

Count 1: 18 U.S.C. § 1001 (False Statements)
Count 2: 18 U.S.C. § 1001 (False Statements)
Count 3: 33 U.S.C. §§ 1319(c)(1), 1321(b)(3)
   (Clean Water Act - Negligent Discharge of a Pollutant)
Count 4: 16 U.S.C. §§ 703 and 707(a)
   (Migratory Bird Treaty Act)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: Count 1 & 2: 5 years imprisonment, $250,000 fine, 3 years
supervised release, $100 special assessment; Count 3: 1 year
imprisonment, $100,000 fine, 1 year supervised release, $25 special
assessment; Count 4: 6 month imprisonment, $15,000 fine, 1 year
supervised release, $10 special assessment.

---

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

SAN FRANCISCO DIVISION

---

**DEFENDANT - U.S**

▶ JOHN JOSEPH COTA

DISTRICT COURT NUMBER

CR 08-0160 JCS

---

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

**U.S. COAST GUARD/EPA**

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

CR-08-0160 MAG

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   J. SCHMIDT/STACEY GEIS

---

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

NDCA

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes   If "Yes" give date filed
been filed?   ☐ No

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

Bail Amount:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:   Before Judge:

Comments:

---

32.

Exhibit 5

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: San Francisco

UNITED STATES OF AMERICA,

**V.**

JOHN JOSEPH COTA,

*CR08-0160 JCS*

DEFENDANT.

---

### SUPERSEDING INDICTMENT

Violations: Title 18, United States Code §
1001 (false statements) (two counts); Title 33
United States Code §§ 1319(c)(1)(A), 1321(b)
(3) (Clean Water Act) (one count)(a Class A
misdemeanor); Title 16 United States Code §§
703, 707 (Migratory Bird Treaty Act) (one
count) (a Class B Misdemeanor)

---

A true bill.

_Angela Vermeulen_
Foreman

Filed in open court this _22d_ day of
_APRIL 2008_

_____
Clerk

Bail, $ _NO PROCESS_

---

33.

1  JOSEPH P. RUSSONIELLO
   United States Attorney
2  BRIAN J. STRETCH (CASBN 163973)
   Chief, Criminal Division
3  STACEY P. GEIS (CASBN 181444)
   JONATHAN SCHMIDT (CASBN 230646)
4  Assistant United States Attorneys
   450 Golden Gate Ave., 11th Floor
5  San Francisco, CA 94102
   (415) 436-7126 (tel)
6  (415) 436-7234 (fax)
   Stacey.Geis@usdoj.gov
7  Jonathan.Schmidt@usdoj.gov

8
9  RONALD J. TENPAS
   Assistant Attorney General
   Environment and Natural Resources Division
10 United States Department of Justice
   Richard A. Udell
11 Senior Trial Attorney
   Environmental Crimes Section
12 P.O. Box 23985
   L'Enfant Plaza Station
13 Washington, DC 20004
   (202) 305-0361 (tel)
14 (202) 514-8865 (fax)
   Richard.Udell@usdoj.gov
15
   Attorneys for Plaintiff
16 United States of America

17                  UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20

21
                                    )  No. CR 08 -00160-JCS
22 UNITED STATES OF AMERICA,        )
                                    )  VIOLATIONS:
23        Plaintiff,                )  Title 18 U.S.C. § 1001 (false statements)
                                    )  (two counts);
24 v.                              )  Title 33 U.S.C. §§ 1319(c)(1)(A),
                                    )  1321(b)(3) (Clean Water Act) (one
25 JOHN JOSEPH COTA,               )  count)(a Class A misdemeanor);
                                    )  Title 16 U.S.C. §§ 703, 707
26        Defendant.                )  (Migratory Bird Treaty Act) (one count)
                                    )  (a Class B Misdemeanor)
27                                  )
                                    )
28 _____ )

                              34.

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### INTRODUCTION

At all times relevant to this Indictment:

1. The Defendant, JOHN JOSEPH COTA, was a resident of Petaluma, California, and a member of the San Francisco Bar Pilots Association. He held a federal first class pilot's license issued by the United States Coast Guard, and a state pilot's license issued by the Board of Pilot Commissioners for the Bays of San Francisco, San Pablo and Suisun. COTA had been employed as a Pilot in San Francisco Bay since 1981.

2. The *M/V Cosco Busan* was a 901 foot, 65,131 gross ton container ship registered in Hong Kong and bearing IMO number 9231743.

3. On November 7, 2007, the *M/V Cosco Busan,* with JOHN JOSEPH COTA as its pilot, departed the Port of Oakland in heavy fog and struck the Delta tower of the San Francisco Bay Bridge, which resulted in the discharge of more than 50,000 gallons of heavy fuel oil and caused environmental damage, including the loss of migratory birds.

### LEGAL FRAMEWORK

Federal Requirements for Licensed Pilot's Annual Medical Exam

4. Title 46 U.S.C. § 7101 together with 46 C.F.R. §10.709 mandates that "every person holding a license or endorsement as a first class pilot shall have a thorough physical examination each year while holding a license or endorsement." 46 C.F.R. § 10.709(b). Further, an individual with a first class license or endorsement "may not operate under authority of that license or endorsement until a physical examination has been satisfactorily completed." 46 C.F.R. §10.709(d). The exam must be given by a licensed physician or physician assistant who completes a Coast Guard physical examination form or the equivalent. 46 C.F.R.§§ 10.205(d), 10.709(d).

The Clean Water Act and the Oil Pollution Act

5. In the Federal Water Pollution Control Act (the "Clean Water Act"), as amended by the Oil Pollution Act, 33 U.S.C. § 1321(b)(1), Congress has declared that it is the

2

*35.*

1   policy of the United States that there should be no discharges of oil or hazardous

2   substances into or upon the navigable waters of the United States or the adjoining

3   shorelines.

4       6. The Clean Water Act makes it a crime for a person to negligently discharge oil into

5   or upon the navigable waters or contiguous zone of the United States in such quantities as

6   may be harmful. 33 U.S.C. §§ 1319(c)(1) and 1321(b)(3).

7       7. The Clean Water Act defines a "discharge" as any spilling, leaking, pumping,

8   pouring, emitting, emptying or dumping. 33 U.S.C. § 1321(a)(2). The Clean Water Act

9   defines "oil" as oil of any kind or in any form, including, but not limited to, petroleum,

10  fuel oil, sludge and oil residue. 33 U.S.C. § 1321(a)(1).

11      8. Federal regulations promulgated under the Clean Water Act define a "harmful"

12  quantity of oil as including any discharges of oil that cause a film or sheen upon or

13  discoloration of the surface of the water or adjoining shorelines or cause a sludge or

14  emulsion to be deposited beneath the surface of the water or adjoining shorelines. 40

15  C.F.R. § 110.3

16      9. The Clean Water Act defines the "navigable waters" of the United States as the

17  waters of the United States and the territorial seas, which are defined to be water

18  extending three (3) miles seaward of the ordinary low tide mark. 33 U.S.C. §§ 1362(7)

19  and 1362(8). Navigable waters also includes internal waters, which are "the waters

20  shoreward of the territorial sea baseline." 33 C.F.R. §§ 2.24(a); 2.36. San Francisco Bay

21  is a navigable waterway of the United States.

22                     The Migratory Bird Treaty Act

23      10. The Migratory Bird Treaty Act ("MBTA") makes it unlawful for any person, at

24  any time, by any means or in any manner, to take or kill any migratory bird without a

25  permit or as otherwise provided by regulation. 16 U.S.C. §§ 703, 707(a).

26      11. The term "take" in the MBTA includes killing or wounding. 50 C.F.R. § 10.12.

27      12. The Brown Pelican (*Pelecanus occidentalis*), Marbled Murrelet, (*Brachyramphus*

28  *marmoratus*), and Western Grebe, (*Aechmophorus occidentalis*), among others, are listed

3

as migratory birds pursuant to the MBTA.  50 C.F.R. § 10.13.

## Count One -- 18 U.S.C. §1001
### (False Statements)

13.  Paragraphs 1-4 are realleged and incorporated by reference as though fully set forth herein.

14.  On or about January 18, 2006, in the Northern District of California, the defendant,

### JOHN JOSEPH COTA,

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically on United States Coast Guard Form CG-719K – Merchant Mariner Physical Examination Report – in that he certified that all the information he provided was complete and true to the best of his knowledge, when in fact he knew that the information he provided was neither complete nor true; including the information provided in Sections VI and VII of the form regarding current medications, the dosage, possible side effects and medical conditions for which the medications are taken.

All in violation of Title 18, United States Code, Section 1001(a)(2).

//

//

//

//

//

//

///

//

//

4

37.

1

2

**Count Two -- 18 U.S.C. §1001**
**(False Statements)**

15. Paragraphs 1-4 are realleged and incorporated by reference as though fully set forth herein.

16. On or about January 19, 2007, in the Northern District of California, the defendant,

JOHN JOSEPH COTA,

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically on United States Coast Guard Form CG-719K – Merchant Mariner Physical Examination Report – in that he certified that all the information he provided was complete and true to the best of his knowledge, when in fact he knew that the information he provided was neither complete nor true; including the information provided in Sections VI and VII of the form regarding current medications, the dosage, possible side effects and medical conditions for which the medications were taken.

All in violation of Title 18, United States Code, Section 1001(a)(2).

//

//

//

//

//

//

//

//

//

//

//

5

38.

## Count Three -- 33 U.S.C. §§ 1319(c)(1), 1321(b)(3)
### (Clean Water Act – Negligent Discharge of a Pollutant)

17. Paragraphs 1-10 are realleged and incorporated by reference as though fully set forth herein.

18. On or about November 7, 2007, in San Francisco Bay, within the Northern District of California, the defendant,

### JOHN JOSEPH COTA,

did negligently discharge and cause the discharge of oil in such quantities as may be harmful from a vessel, the *M/V Cosco Busan*, into and upon the navigable waters of the United States, without a permit. Specifically, on or about November 7, 2007, Defendant Cota, while piloting the *M/V Cosco Busan*, negligently caused more than 50,000 gallons of heavy fuel oil to be discharged from the vessel into San Francisco Bay by acting in a negligent manner, that included, the following: (a) failing to pilot a collision free course; (b) failing to adequately review with the Captain and crew of the *M/V Cosco Busan* prior to departure the official navigational charts of the proposed course, the location of the San Francisco Bay aids to navigation, and the operation of the vessel's navigational equipment; (c) departing port in heavy fog and then failing to proceed at a safe speed during the voyage despite limited visibility; (d) failing to use the vessel's radar while making the final approach to the Bay Bridge; (e) failing to use positional fixes during the voyage; and (f) failing to verify the vessel's position vis-à-vis other established and recognized aids to navigation throughout the voyage.

All in violation of Title 33, United States Code, Sections 1319(c)(1)(A) and 1321(b)(3), a Class A misdemeanor.

//

//

//

//

6

39.

**Count Four – 16 U.S.C. §§ 703 and 707(a)**
**(Migratory Bird Treaty Act)**

19. Paragraphs 1-13 are realleged and incorporated by reference as though fully set forth herein.

20. On or about November 7, 2007, in San Francisco Bay, within the Northern District of California, the defendant,

JOHN JOSEPH COTA,

without being permitted to do so by regulation as required by law, did take migratory birds, including at least one Brown Pelican, (*Pelecanus occidentalis*), Marbled Murrelet, (*Brachyramphus marmoratus*), and Western Grebe, (*Aechmophorus occidentalis*).

All in violation of Title 16, United States Code, Sections 703 and 707(a), and Title 50, Code of Federal Regulations, Sections 21.11, 20.71 and 20.72, a Class B misdemeanor.


DATED:                                    A TRUE BILL.

                                          _____
                                          FOREPERSON



JOSEPH P. RUSSONIELLO
United States Attorney


_____
BRIAN J. STRETCH
Chief, Criminal Division

(Approved as to form: _____ )
                       AUSA Geis


RONALD J. TENPAS
Assistant Attorney General

_____
Richard A. Udell
Senior Trial Attorney
Environmental Crimes Section

7

40.

# EXHIBIT 6

**❿❾ Bullivant|Houser|Bailey** PC

Attorneys at Law

# FAX

| | | | |
|---|---|---|---|
| **From:** | Samuel H. Ruby | **Date:** | April 11, 2008 |
| **C/M #:** | 10734/00119 | **Reference:** | COSCO BUSAN |

---

**Number of pages being transmitted including the cover page:**  **8**

---

| | | **Fax No.** | **Telephone No.** |
|---|---|---|---|
| To: | David P. Schack | (310) 552-5001 | (310) 552-5000 |
| | K & L Gates | | |

**Message/Document(s) faxed:**

Letter to David P. Shack, dated April 11, 2008.

**Please call fax operator at (415) 352-2700 if all pages are not received.**

---

ORIGINAL DOCUMENTS:  Will follow by ☒ mail ☐ courier -- OR - ☐ Will not follow unless requested.

---

CONFIDENTIALITY NOTE: The documents accompanying this facsimile transmission contain information belonging to Bullivant Houser Bailey which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone to arrange for return of the original documents to us.

As this facsimile may fade, you are advised to make photocopies for files to ensure a permanent record.

FAX OPERATOR: Return originals to:     Wai Ling                         Ext:    2750

---

41.

Exhibit 6

**HB  Bullivant | Houser | Bailey** PC.

Attorneys at Law

SAMUEL H. RUBY
Direct Dial +415 352-2725
E-mail: samuel.ruby@bullivant.com

April 11, 2008

*Via Facsimile and U.S. Mail*

David P. Shack
K & L Gates
10100 Santa Monica Blvd., 7th Fl.
Los Angeles, CA  90067

      Re:   **COSCO BUSAN**
            Continental Insurance Co. Policy:  H856049
            Insured:  San Francisco Bar Pilots, John Cota, et al.
            D/L:  November 7, 2007
            Our File:  10734/119

Dear Mr. Schack:

Continental has considered the points raised in your letter of March 20, 2008.  It remains Continental's position that the policy does not provide for payment of Captain Cota's defense costs in connection with criminal investigations or proceedings arising out of the Cosco Busan incident.

## THE DUTY TO DEFEND

**A.**     **Relationship to the Policy's Coverage**

You contend that Continental has a duty to defend even if there is no potential for coverage under the policy.  However, you cite no authority for this proposition, and it is contrary to the authorities you citied in your previous letter.  Also, your new argument is not supported by the terms of the policy.

Clause 8 of Section C does not provide for defense of all claims regardless of coverage.  Rather, Clause 8 provides for defense of "claims *hereunder*" and "any suit or action at law that may possibly result in a claim *hereunder*."  The term "hereunder" clarifies that the duty to defend extends only to claims that may potentially be covered *under* the policy.  This is consistent with the general principle of insurance law that the duty to defend

David P. Shack
April 11, 2008
Page 2

exists where the complaint potentially seeks damages "within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966).

At considerable length, you expounded upon that very principle in your letter of February 13, 2008. There, you contended that the "claim asserted by the U.S. Attorney falls within the indemnification provision of Section C." From that premise, you argued that Continental has a duty to defend. Beginning on page 5, you said:

> For more than forty years, beginning with the seminal decision in Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966), the California appellate courts have emphasized the expansive breadth of an insurer's duty to defend and the rule that an insurer must defend the insured if the allegations against the insured create any possibility of coverage . . . . The Court further held that an insurer *can only escape its defense duty "[i]f the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage*." Id. (emphasis added).

You underlined "any possibility of coverage" and used both italics and boldface to emphasize "a single issue which could bring it within the policy coverage."

Continuing on page 6, you quoted a passage in Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076 (1991), wherein the Supreme Court reaffirmed that the insurer's duty is to defend "against claims that create a potential for indemnity" and suits "which potentially seek[] damages within the coverage of the policy." Then, citing Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287 (1993), you asserted (with emphasis), "In fact, the bare possibility of coverage is sufficient to trigger the duty of defense." You went on to cite Miller v. Elite Ins. Co., 100 Cal. App. 3d 739 (1980), for the proposition that "[a]n insurer must defend a suit which potentially seeks damages within the coverage of the policy." Revisiting Montrose, you argued that the "standard" is whether "there is no possibility of coverage," and you quoted from the Montrose opinion again.

That quote carried over to page 7, where you continued to argue in the same vein. You asserted that "the possibility of coverage exists" here, and that "under these circumstances, [Continental] has an obligation . . . to defend Captain Cota." Nowhere did you suggest that Continental has a duty to defend *even if the "possibility of coverage" does not exist here*. If that was your position, then we do not understand why you devoted so much discussion to Gray and its progeny.

David P. Shack
April 11, 2008
Page 3

Repeatedly, courts have found no duty to defend where there was no "possibility" or "potential" for coverage. For example, courts have found no duty to defend where the allegations do not potentially fall within the coverage grant. See, e.g., Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co., 76 Cal. App. 3d 272 (1977) (no duty to defend where there was no allegation of "property damage"); Giddings v. Industrial Indemnity Co., 112 Cal. App. 3d 213 (1980) (same); B&E Convalescent Center v. State Compensation Ins. Fund, 8 Cal. App. 4th 78 (1992) (no duty to defend where no allegation of an "occurrence"). Courts have also found that there is also no duty to defend where the allegations are necessarily within a policy exclusion. See, e.g., Hartford Fire Ins. Co. v. Superior Court, 142 Cal. App. 3d 406 (1983) (no duty to defend in light of aircraft exclusion); California Ins. Guarantee Assn. v. Wood, 217 Cal. App. 3d 944 (1990) (no duty to defend in light of business pursuits exclusion); Aetna Casualty & Surety Co. v. Superior Court, 19 Cal. App. 4th 320 (1993) (no duty to defend in light of willful acts exclusion implied-by-law by Insurance Code § 533); Atlas Assurance Co. v. McCombs Corp., 146 Cal. App. 3d 135 (1983) (no duty to defend in light of dishonest acts exclusion).

Both of those lines of cases are relevant here. In general, the policy does not cover criminal liability. Even if it did, the pollution exclusion would bar coverage for the particular criminal liabilities with which Captain Cota is charged. In view of the pollution exclusion, we do not think it is necessary to reach the general issue of coverage for criminal liability. However, after we first reiterate Continental's points regarding the pollution exclusion, we will briefly address the broader issue.

## THE POLLUTION EXCLUSION

Once again, the pollution exclusion provides:

### POLLUTION EXCLUSION AND BUYBACK CLAUSE

#### Applicable to All Policy Sections

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

David P. Shack
April 11, 2008
Page 4

You have not disputed that this exclusion applies to Section C of the policy.  Nor have you disputed that the charges against Captain Cota arise out of the discharge, etc. of "oil or other petroleum substance or derivative."

The pollution exclusion is qualified by several "buyback" clauses, but those clauses in turn are qualified by the following language:

> Nothing contained in this Endorsement shall operate to provide
> any coverage with respect to:
>
> * * * * *
>
> (3) Fines, penalties, punitive damages, exemplary damages,
> treble damages or any other damages resulting from the
> multiplication of compensatory damages.

The criminal provision of the Clean Water Act expressly allows only "penalties," which are identified as imprisonment and fines.  The Migratory Bird Treaty Act similarly allows only for imprisonment and fines.

You raise the specter if he is found criminally liable, Captain Cota might also be ordered to make restitution to the United States for clean-up costs.  However, your support for this proposition is a plea agreement between different parties in a different criminal proceeding arising out of a different incident.  You have not cited a statute or case that would allow for an order of restitution in the absence of a stipulation by the defendant.  Nonetheless, assuming for the sake of discussion that a court could order restitution in a criminal proceeding under the Clean Water Act, that theoretical possibility would not give rise to coverage here, for two reasons.

First, the Department of Justice has chosen here to pursue recovery of clean-up costs in a *civil* action, which it filed long before bringing any criminal charges.  Continental provided a defense to the civil action until the defense was assumed by the vessel owner pursuant to Harbors & Navigation Code § 1198.  To our knowledge, the vessel owner is continuing to defend Captain Cota in that action.

Second, even if the Department of Justice had chosen to pursue recovery of clean-up costs in a criminal proceeding, the pollution exclusion would still apply.  In <u>State Farm Fire & Cas. Co. v. Superior Court</u>, 191 Cal. App. 3d 74 (1987), the court held that an exclusion for "fines," "penalties," and "punitive damages" extends to restitution ordered in a criminal case.  The court commented, "No conceivable justification exists for allowing an individual

David P. Shack
April 11, 2008
Page 5

to pass on such liability to an insurance carrier." We brought the State Farm case to your attention in our previous letter, but your reply does not address it.[1]

## CRIMINAL LIABILITY IN GENERAL

The broader issue you raise is whether criminal liability in general is within the basic scope of the policy's coverage. In light of the pollution exclusion, Continental believes that issue is moot in this case. However, for the sake of providing a complete response to your letter—and as an additional basis for its declination—Continental has asked us to reply to your points as follows.

Policy language cannot be deemed ambiguous in the abstract; it must be interpreted in context. Bank of the West v. Superior Court, 10 Cal. Rptr. 2d 538 (1992). A court must not "simply look at the bare words" and "ignore [their] *raison d'etre*." MacKinnon v. Truck Ins. Exchange, 3 Cal. Rptr. 3d 228 (2003). Here, the intent of the parties (the San Francisco Bar Pilots and Continental) is actually recited in the policy:

> The provisions of California Senate Bill No. 1109 and the provisions of the agreements between San Francisco Bar Pilots and the owners, operators, charterers and agents of vessel on whose behalf piloting services are rendered have been made available to Assurer. It is the intent of the Assurer and the Assured that the Assured's legal liabilities that would otherwise be covered by the exculpatory and indemnification clauses set forth within California Senate Bill No. 1109 and within the pilot Contract and agreements as described above be insured by this policy, except as may be specifically excluded by the terms and conditions as shown below.

(Section B, Clause 1(g); Section C, Clause 1(g).) Given that Senate Bill No. 1109 (now codified as Harbors & Navigation Code § 1198) was the *raison d'etre* for the policy, MacKinnon dictates that the policy be construed in the context of that legislation.

Continental does not read § 1198 to require a vessel owner to insure, defend or indemnify a pilot in connection with criminal charges. Nor has Continental found anything in the legislative history of the bill to suggest that the sponsors or other supporters of the bill

---

[1] Insofar as you are relying on AIU v. Superior Court, 51 Cal. 3d 807 (1990), we note that AIU did not involve a criminal prosecution, nor did it construe an exclusion for "fines, penalties, and punitive damages." Nor did the AIU court disapprove of State Farm.

David P. Shack
April 11, 2008
Page 6

had criminal liability in mind. On the contrary, the Bar Pilots themselves assured legislators that the bill would not "interfere with the effective means now in place for disciplining pilots who fail to perform in accordance with standards," including "loss or suspension of license, administrative fines. and *criminal penalties*." Other comments in the legislative history refer to "civil liability" and never to criminal liability.

Even in the absence of all this relevant context. Continental would not agree that the policy covers criminal liability. Section C, Clause 1 provides that the insured is "protected and indemnified" for "legal liabilities." Protection and indemnity ("P&I") insurance is a form of marine liability insurance. I am not aware of any case interpreting a P&I policy to insure against criminal liability, and your letter does not cite any such case. Even outside the P&I context (i.e., in the non-marine, general liability context), I am not aware of any cases interpreting "legal liability" to include criminal liability.

Bodell v. Walbrook. 119 F.3d 1411 (9th Cir. 1997), is not on point. That case involved neither a P&I policy nor a commercial general liability policy. Rather, it involved an unusual errors and omissions policy that promised the insured representation in "any proceeding or suit brought by any governmental regulatory agency seeking non-pecuniary relief." One of the issues was whether a duty to defend the particular proceeding in question was barred by Insurance Code § 533.5. Here. the policy does not promise representation in "any proceeding or suit brought by any governmental regulatory agency seeking non-pecuniary relief." and Continental does not rely on Insurance Code § 533.5.[2]

You point out that the policy does not contain a "criminal acts" exclusion. Where they are used. such exclusions serve the purpose of barring coverage for *civil* liability for acts that are also criminal in nature. 20TH Century Ins. Co. v. Stewart, 63 Cal. App. 4th 1333 (1998): Allstate Ins. Co. v. Talbot. 690 F. Supp. 886 (N.D. Cal. 1988): DIMUGNO & GLAD, CALIFORNIA INSURANCE LAW HANDBOOK (2008), § 50:1.4. "Criminal acts" exclusions are unnecessary to preclude coverage for *criminal* liability, because criminal liability is not even within the basic scope of most policies' (including this policy's) coverage.

---

[2] Given the other reasons why there is no duty to defend here. it is unnecessary to rely on the statute. However. Continental could well rely on the statute, given that the Ninth Circuit's ruling is not binding on state courts. Moreover, the decision in Bodell was not unanimous, and the dissenting judge—Judge Kozinski—is now the Chief Judge of the Ninth Circuit. We expect the analysis in his dissenting opinion would prevail if the issue were litigated again in state or federal court.

David P. Shack
April 11, 2008
Page 7

## CONCLUSION

Continental respectfully reaffirms its declination to pay for Captain Cota's defense in connection with the Department of Justice's criminal investigation and charges. There may be other terms and conditions, not mentioned herein, that apply. Nothing in this letter should be construed as a waiver of any of Continental's rights or Captain Cota's obligations under the policy or the law.

Very truly yours,

Samuel H. Ruby

SHR:wlw

cc:     Chip Junghans (*via E-mail*)
        SF Bar Pilots, c/o Paul Sceth (*via E-mail*)

# EXHIBIT 7

**𝕭𝕴𝕭 Bullivant|Houser|Bailey** PC

Attorneys at Law

# FAX

| | | | |
|---|---|---|---|
| **From:** | Samuel H. Ruby | **Date:** | April 21, 2008 |
| **C/M #:** | 10734/00119 | **Reference:** | |

---

**Number of pages being transmitted including the cover page:** *3*

---

| | | **Fax No.** | **Telephone No.** |
|---|---|---|---|
| **To:** | David P. Shack | (310) 552-5001 | (310) 552-5000 |
| | K & L Gates | | |

---

**Message/Document(s) faxed:**

See attached.

**Please call fax operator at (415) 352-2700 if all pages are not received.**

---

ORIGINAL DOCUMENTS: Will follow by ☒ mail ☐ courier - OR - ☐ Will not follow unless requested.

---

**CONFIDENTIALITY NOTE:** The documents accompanying this facsimile transmission contain information which is confidential and/or legally-privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone to arrange for return of the original documents to us.

As this facsimile may fade, you are advised to make photocopies for files to ensure a permanent record.

FAX OPERATOR: Return originals to:    Doreen Parker    Ext: 2746

10531011 1

49.

Exhibit _7_

**ЖБ Bullivant Houser Bailey**

SAMUEL H. RUBY
Direct Dial: (415) 352-2723
E-mail: samuel.ruby@bullivant.com

April 21, 2008

*Via Facsimile and U.S. Mail*

David P. Schack
K & L Gates
10100 Santa Monica Blvd., 7th Fl.
Los Angeles, CA  90067

        Re:    COSCO BUSAN
                Continental Insurance Co. Policy: H856049
                Insured:  San Francisco Bar Pilots, John Cota, et al.
                D/L: November 7, 2007
                Our File: 10734/119

Dear Mr. Schack:

      Continental acknowledges receipt of your letter of April 11, 2008.  Continental is prepared to defend Captain Cota subject to a full reservation of rights, including but not limited to:

- The right to withdraw from the defense, immediately, if the limit of the policy is exhausted;[1]

- The right to withdraw from the defense, upon reasonable notice, for any other reason, including but not limited to a judicial declaration that Continental has no duty to defend and/or an assumption of the defense by the vessel interests;

- The right, under Buss v. Superior Court, 10 Cal. 4th 35 (1997), to seek reimbursement of costs paid or advanced if the court declares that Continental has no duty to defend;

---

[1] Please note that the $1 million limit of the policy has already been depleted by Continental's payment of approximately $315,000 towards the defense of Captain Cota in connection with the various civil claims and actions.  This letter speaks only for Continental, as the underwriter of the primary policy.  Continental does not speak for any excess underwriters.

*50.*

David P. Shack
April 21, 2008
Page 2

- The right of subrogation to Captain Cota's rights, if any, with respect to defense and indemnification by the vessel interests under § 1198; and

- The right to decline to indemnify Captain Cota in connection with any plea bargain, verdict, sentence, or other settlement or judgment.

Without conceding that it is necessary, Continental will agree that Captain Cota may retain independent ("Cumis") counsel, subject to the limitations (including limitations regarding hourly rates) of Civil Code § 2860.

On behalf of Continental, we have filed today an action for declaratory relief in the U.S. District Court for the Northern District of California. The suit requests a judicial declaration of the parties' rights and obligations under the policy. A copy of the complaint and a request for waiver of service of the summons will follow under separate cover.

Ordinarily, Continental would invoke the arbitration clause of the policy to resolve a coverage dispute such as this; however, the issues in this case include the interpretation of Harbors & Navigations Code § 1198, which implicates the vessel interests. Because Captain Cota and Continental cannot compel the vessel interests to participate in arbitration, Continental believes it would be more efficient to proceed in court, where all issues affecting all interested parties can be resolved at the same time.

Nothing in this letter should be construed as a waiver of any of Continental's rights or Captain Cota's obligations under the policy or the law.

Very truly yours,

Samuel H. Ruby

SHR:wlw

cc:    Chip Junghans (*via E-mail*)
       SF Bar Pilots, c/o Paul Seeth  (*via E-mail*)

