Samuel H. Ruby, SBN 191091
E-Mail: samuel.ruby@bullivant.com
Kevin K. Ho, SBN 233408
E-Mail: kevin.ho@bullivant.com
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone:    415.352.2700
Facsimile:    415.352.2701

Steven M. Crane, SBN 108930
E-mail:  scrane@bcrslaw.com
BERKES CRANE ROBINSON & SEAL LLP
515 South Figueroa Street, Suite 1500
Los Angeles, California 90071
Telephone:    213.955.1150
Facsimile:    213.955.1155

Attorneys for Plaintiff and Counterdefendant
The Continental Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN JOSEPH COTA; REGAL STONE LIMITED; FLEET MANAGEMENT LTD,; and the M/V COSCO BUSAN, LR/IMO Ship No. 9231743 her engines, apparel, electronics, tackle, boats, appurtenances, etc., *in rem*,<br><br>Defendants.<br><br>─────────────<br><br>AND RELATED CROSS-ACTIONS | Case No.: C-08-2052-SC<br><br>Related to Case No:<br>07-CV-05926-SC<br>07-CV-06045-SC<br>07-CV-05800-SC<br>08-CV-02268-SC<br><br>**THE CONTINENTAL INSURANCE COMPANY'S:**<br><br>**(1) OPPOSITION, IN PART, TO COTA'S MOTION TO STAY; AND**<br><br>**(2) OPPOSITION TO COTA'S ALTERNATIVE MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date:    September 5, 2008<br>Time:              10:00 a.m.<br>Courtroom:      1 |

─ 1 ─

# I. SUMMARY OF ARGUMENT

By way of his motion, Cota demanded arbitration of his dispute with Continental over Continental's rights and obligations under the policy. Acknowledging his right to arbitration, Continental has dismissed Cota as a defendant to Continental's complaint. Consequently, with respect to the claims formerly asserted by Continental against Cota, his motion to stay (or, in the alternative, compel arbitration) is moot. Indeed, the Court lacks *jurisdiction* to stay or dismiss claims that are no longer before the Court. <u>Commercial Space Management Co., Inc. v. Boeing Co., Inc.</u>, 193 F.3d 1074, 1076-78 (9th Cir. 1999). The Court should deny Cota's motion insofar as it concerns the claims that have been dismissed.

Continental does not oppose a stay of the remainder of the case pending the outcome of the arbitration.

# II. STATEMENT OF THE CASE

## A.    California Harbors & Navigations Code § 1198

Cota is a member of the San Francisco Bar Pilots, an association of professionals who go aboard and navigate vessels entering and exiting San Francisco Bay. Typically, if a vessel under the direction of a pilot is involved in an accident, the alleged victims will bring claims not only against the vessel and its owners and operators but also against the pilot. To protect its members against such claims, the Bar Pilots successfully sponsored California Senate Bill No. 1109, which was enacted into California law as Harbors & Navigations Code § 1198.

Section 1198 provides, in pertinent part:

> (b) A pilot who holds a state license for the Bays of San Francisco, San Pablo, and Suisun shall arrange to have available, upon advance written notice, trip insurance, with coverage limits of thirty-six million dollars ($36,000,000), naming as insureds the pilot, any organization of pilots to which the pilot belongs, and their officers and employees, and insuring the named insureds against any civil claim, demand, suit, or action by whomsoever asserted, arising out of, or relating to, directly or indirectly, acts or omissions of the insureds in connection with the provision of pilotage service, except willful misconduct.

> (c) Every vessel, owner, operator, or demise or bareboat charterer hiring a pilot with a state license for the Bays of San Francisco, San Pablo, and Suisun shall either defend, indemnify, and hold

harmless pilots pursuant to paragraph (1), or alternatively, notify pilots of an intent to pay for trip insurance to paragraph (2). If a vessel or its owner, operator, or demise or bareboat charterer does not provide written notice pursuant to paragraph (2) of an intent to exercise the trip insurance option, then the vessel and its owner, operator, and demise or bareboat charterer will be deemed to have elected the obligation to defend, indemnify, and hold harmless pilots pursuant to paragraph (1).

Paragraph (1) provides, in pertinent part:

A vessel subject to this paragraph and its owner, operator, and demise or bareboat charterer shall defend, indemnify, and hold harmless the pilot, any organization of pilots to which the pilot belongs, and their officers and employees, with respect to liability arising from any claim, suit, or action, by whomsoever asserted, resulting in whole, or in part, from any act, omission, or negligence of the pilot, any organization of pilots to which the pilot belongs, and their officers and employees....

Paragraph (2) provides, in pertinent part:

In lieu of paragraph (1), a vessel subject to this subdivision and its owner, operator, demise or bareboat charterer, and agent may elect to notify the pilot, or the organization of pilots to which the pilot belongs, of intent to pay for trip insurance, as described in subdivision (b). If notice of this election is received, in writing, by the pilot, or the organization of pilots to which the pilot belongs, at least 24 hours prior to the time pilotage services are requested, the vessel, and its owner, operator, demise or bareboat charterer, and agent are not subject to the requirements of paragraph (1). The pilot shall take all steps necessary to have trip insurance coverage in place during the vessel movement for which it is requested. The pilot shall assess to the vessel the premium for the trip insurance at the pilot's cost, in addition to any other applicable rates and charges for the pilotage services provided.

**B.    The Continental Policy**

In order to be able to provide vessels with trip insurance when requested to do so, the Bar Pilots obtained a policy from Continental. The policy has been renewed several times; this action concerns renewal policy No. H856049, which was in effect from January 1, 2007 to January 1, 2008. (Schack Decl., Ex. A.) "Section B" of the policy provides "Primary Trip Insurance" when "trip insurance has been ordered" by a vessel "pursuant either to the provisions of California Senate Bill No. 1109 or to private agreement between the Assured and the" vessel.

1   (Id. at 6.)  Conversely, when vessel interests do not order trip insurance, Section B does not
2   apply—but then, the pilot may call upon *the vessel interests* to defend and indemnify, pursuant
3   to Paragraph (1) of Harbors & Navigations Code § 1198.

4          The policy provides not only "Primary Trip Insurance" but also "Contingent Legal
5   Liability" insurance.  (Id. at 9-12.)  That coverage, which is set forth in Section C of the policy,
6   applies where trip insurance "has NOT been ordered" by a vessel.  (Id. at 9.)  Whereas the
7   premium for trip insurance is $129.35 per trip, the premium for the contingent insurance is only
8   $9.49 per trip.  (Id. at 3.)  The lower premium reflects the parties' expectation that ordinarily,
9   when the vessel interests do not purchase trip insurance, *they* will defend and indemnify the
10  pilot.  Only if the vessel interests should fail to do so will it be necessary for the pilot to look to
11  the contingent insurance for defense and indemnity.

12  **C.      The *Cosco Busan* Incident**

13         In November 2007, the *M/V Cosco Busan* arrived at the Port of Oakland to discharge
14  and/or take on cargo.  Defendant Regal Stone is the owner of the Cosco Busan, and defendant
15  Fleet Management is its operator.  Prior to departing the Port of Oakland, the vessel interests
16  contacted the Bar Pilots, who dispatched Cota to pilot the vessel during its exit from San
17  Francisco Bay.  The vessel interests did not request trip insurance for Cota.  As the Court well
18  knows, not long into the trip, the vessel allided with the San Francisco-Oakland Bay Bridge.
19  The vessel was damaged in the allision, and as a result of the damage, some of the vessel's fuel
20  supplies spilled into the Bay.

21  **D.      The Civil Litigation**

22         In connection with the spill, a number of civil claims were made against the vessel
23  interests and Cota.  Continental promptly provided Cota with defense counsel.  (Motion at 4:6-
24  7.)  While defending Cota, Continental pressed the vessel interests to assume Cota's defense
25  pursuant to § 1198.  (Id. at 4:7-11.)  Eventually, the vessel interests did assume the defense, but
26  not before Continental incurred $315, 321.31 in attorneys' fees and other litigation expenses.
27  Vessel interests have not reimbursed Continental for any of those fees and expenses.

28  ///

1  **E.    The Criminal Charges**

2    In addition to bringing one of the first *civil* actions against Cota, the United States

3  Department of Justice also included him as a "target" in its *criminal* investigation into the *Cosco*

4  *Busan* incident.   Eventually, the United States filed a criminal indictment against Cota.

5  (Schack Decl., Ex. 4.)  The indictment levied charges that Cota had violated the Clean Water

6  Act and the Migratory Bird Treaty Act.

7    Cota requested that Continental defend him against the criminal charges.  Continental

8  denied that Section C of the policy imposes a duty to defend or indemnify against criminal

9  charges. (Schack Decl., Ex. 6.)  Continental also asserted that any duty to defend or indemnify

10  is precluded in this instance by the policy's "Pollution Exclusion and Buyback Clause"

11  endorsement; specifically, that part of the pollution exclusion that pertains to "fines, penalties,

12  punitive damages…." (Id.; see Schack Decl., Ex. 1 at 4.)

13  **F.    The Present Action**

14    After Cota continued to dispute Continental's coverage position, Continental filed this

15  action for declaratory relief.  Continental sought a judicial declaration that it has no duty (and

16  has never had a duty) to defend or indemnify Cota in connection with the criminal investigation

17  or charges. (See First Amended Complaint, Second Cause of Action.)  As an accommodation to

18  Cota, Continental has agreed to pay his criminal defense costs (up to the policy limit) pending

19  the outcome of the dispute. (Schack Decl., Ex. 7.)  If Continental's position is upheld,

20  Continental will seek reimbursement of the payments. (Id.; FAC, Third Cause of Action.)

21    In case Continental's position is *not* upheld—i.e., in case Continental is found to have a

22  duty to defend—Continental seeks a declaration that the vessel interests also have a duty to

23  defend. (FAC, Fourth Cause of Action.)  If that declaration is granted, then by way of equitable

24  subrogation or direct equitable contribution, Continental will seek reimbursement from the

25  vessel interests of Continental's payments towards Cota's criminal defense. (FAC, Fifth Cause

26  of Action.)  And regardless of what happens with respect to the issues of coverage for *criminal*

27  liability, Continental seeks to recover from vessel interests the $315, 321.31 that Continental

28  incurred before the vessel interests assumed Cota's *civil* defense. (FAC, First Cause of Action.)

1  **G.    Cota's Motion**

2        Cota has moved to stay the entire case pending the outcome of the criminal proceedings.

3  Alternatively, Cota has moved to compel arbitration of Continental's Second and Third Causes

4  of Action, citing the arbitration clause in the policy. (Schack Decl., Ex. 1 at 11.)  Although

5  Continental brought that clause to Cota's attention before Continental filed this action  (Schack

6  Decl., Ex. 3 at 22), Cota did not demand arbitration then.  Nor did he demand arbitration after

7  Continental reaffirmed its coverage position.

8        As explained in a subsequent letter (Schack Decl., Ex. 7 at 51), Continental filed this

9  action so that all of the issues between Cota, the vessel interests, and Continental could be

10  resolved in the same forum in a single proceeding.  Cota did not immediately object.  However,

11  by way of his motion, Cota has since advised that he does not waive the arbitration clause and

12  does not consent to having this Court adjudicate the dispute under the policy.

13        Conceding that the dispute with Cota under the policy must be submitted to arbitration if

14  Cota so desires, and having received Cota's motion to compel arbitration, Continental has

15  voluntarily dismissed its complaint as against Cota.  (See Continental's Notice of Dismissal of

16  Complaint As To Defendant John Joseph Cota (Only), Without Prejudice).  Continental will

17  now submit the dispute under the policy to arbitration.

18                              **III.  ARGUMENT**

19  **A.    Insofar As It Concerns Continental's Causes Of Action Against Cota, Cota's
        Motion To Stay Should Be Denied**

20

21        The filing of a voluntary dismissal under Rule 41(a)(1)(A) automatically terminates the

22  action as to the defendant who is the subject of the notice, even if the defendant has a pending

23  motion to dismiss or stay the proceedings.  Concha v. London, 62 F.3d 1493, 1506 (9th Cir.

24  1995); Hamilton v. Shearson Lehman American Express, Inc., 813 F.2d 1532, 1535 (9th Cir.

25  1987).  The District Court loses jurisdiction and cannot impose any terms or conditions on the

26  dismissal.  Commercial Space Management Co., Inc. v. Boeing Co., Inc., 193 F.3d 1074, 1076

27  (9th Cir. 1999).  As the Ninth Circuit has rather bluntly put it, "no court order is required, the

28  parties are left as though no action had been brought, the defendant can't complain, and the

                              – 5 –

1  district court lacks jurisdiction to do anything about it." Id. at 1078. Given that Continental's

2  claims against Cota no longer exist in this Court, the Court has no jurisdiction to stay those

3  claims. Wherefore, to the extent that it concerns those claims, the Court should deny the motion

4  for lack of jurisdiction. Alternatively, the Court should deny the motion as moot.

5  **B.      Continental Does Not Oppose A Stay Of The Remainder Of The Action Pending
          The Outcome Of Arbitration**

6

7          As Cota correctly points out, Continental's Fourth and Fifth Causes of Action against the

8  vessel interests will ripen only if Continental is found by the arbitrators to have a duty to defend

9  the criminal charges. If Continental does not have a duty to defend, then Continental will stop

10 defending. Furthermore, Continental will look first to Cota for reimbursement of criminal

11 defense costs already advanced. Thus, Continental's Fourth and Fifth Causes of Action should

12 be stayed pending the outcome of the arbitration.

13         Conceivably, Continental's First Cause of Action (for reimbursement of *civil* defense

14 costs advanced) could proceed at this time. However, in the interests of avoiding "piecemeal

15 litigation," Continental does not oppose a stay of the remainder of the entire action.

16 **C.      Cota's Alternative Motion To Compel Arbitration Should Be Denied**

17         Just as the Court lacks jurisdiction to *stay* the now-dismissed claims against Cota, the

18 Court lacks jurisdiction to *compel arbitration* of those claims. Looking at it another way, Cota's

19 motion to compel arbitration of those claims is moot. Continental will, however, voluntarily

20 submit the dispute to arbitration. Continental expects Cota to promptly select his arbitrator and

21 cooperate in the scheduling of the proceedings. Continental reserves the right to bring its *own*

22 motion or petition to compel arbitration if Cota does not cooperate.

23 \\\

24 \\\

25 \\\

26 \\\

27 \\\

28 \\\

1    ### IV.  CONCLUSION

2         The Court should deny Cota's motion to stay (or, in the alternative, compel arbitration)

3    insofar as it concerns the Continental's former claims against him, because those claims have

4    now been dismissed.  However, the Court should stay the remainder of the action pending the

5    outcome of the arbitration.

6

7         DATED:  August 15, 2008

8                                        BULLIVANT HOUSER BAILEY PC

9

10                                       By _____

11                                          Samuel H. Ruby
                                            Kevin K. Ho
12
                                         Attorneys for Plaintiff and Counterdefendant
13                                       The Continental Insurance Company

14   10721744.1
                                         *****
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONTINENTAL'S OPPOSITION TO MOTION TO STAY – Case No. 08cv2052-SC